Comstock & Washburn (Albert H. Washburn, of counsel), for the importers.

Charles D. Baker, Asst. U. S. Atty.

WHEELER, District Judge. A portion of these importations appear to have been returned by the appraiser as printed matter dutiable at 25 per cent., and the remainder as litographic prints. In the first finding of the board the parts not lithographic are specified. In the testimony taken in this court this distinction does not appear to be noticed, and is understood to be acquiesced in, and as to that part found not to be lithographic prints the decision is of course affirmed.

As to the rest the testimony shows that some small figures on tissue paper and the like are less than .008 of an inch in thickness, and the rest over .008 and under .020: These appear to have been assessed as printed matter not otherwise provided for, under paragraph 403, Schedule M, § 1, Tariff Act July 1, 1897, c. 11, 30 Stat. 189 [U. S. Comp. St. 1901, p. 1673], because there is no provision in paragraph 400, 30 Stat. 188 [U. S. Comp. St. 1901, p. 1672], for lithographic prints in part below and in part above .008 of an inch in thickness. But they are lithographic prints which are the subject of paragraph 400, and seem to be dutiable at some rate fixed there, either according to the highest rate of any part of a print, or according to the actual thickness of the principal and substantial part of each print. These little figures are not parts of the frames and bodies of the prints, but seem to be rather incidents and ornamentations of them, very small in proportionate surface, and still smaller in proportionate weight. Under these circumstances, it seems as if the thickness of the substantial parts should govern.

Decision reversed as to lithographic prints, and otherwise affirmed.

---

### MEYER v. UNITED STATES.

(Circuit Court, S. D.· New York. February 15, 1905.)

#### No. 3,332.

CUSTOMS DUTIES—CLASSIFICATION—UNFINISHED HANDKERCHIEFS.

The provision in paragraph 345, Schedule J, § 1, Tariff Act July 24, 1897, c. 11, 30 Stat. 181 [U. S. Comp. St. 1901, p. 1663], for "handkerchiefs * * * unfinished," *held* to include cloth cut into pieces which are in the shape of squares and other geometrical figures, and which in that shape are principally used in the manufacture of handkerchiefs.

· On Application for Review of a Decision of the Board of United States General Appraisers.

The decision below, G. A. 5,143, T. D. 23,745, affirmed the assessment of duty by the collector of customs at the port of New York on merchandise imported by William Meyer & Company.

The opinion of the Board of General Appraisers reads as follows:

DE VRIES, General Appraiser. The merchandise consists of small plain squares and pieces cut from flax cloth of various geometrical figures. Duty

was assessed thereon at the rate of 50 per cent. ad valorem, under the provisions of paragraph 345, Schedule J, § 1, Tariff Act July 24, 1897, c. 11, 30 Stat. 181 [U. S. Comp. St. 1901, p. 1663], which, in so far as applicable, reads:

"345. Handkerchiefs composed of flax, * * * or of which * * * [it] is the component material of chief value, whether in the piece or otherwise, and whether finished or unfinished, * * * fifty per centum ad valorem."

Among other claims in the protest, the merchandise is alleged to be dutiable at the rate of 35 per cent. ad valorem, under the last clause of paragraph 346 of said act, Schedule J, § 1, 30 Stat. 181 [U. S. Comp. St. 1901, p. 1663], providing for woven fabrics of flax, etc., under 4½ ounces in weight per square yard, and counting over 100 threads per square inch, etc.

The local appraiser made the following return: "The merchandise in question, contained in case 640, consisted of unfinished flax handkerchiefs advanced beyond the condition of cloth by being cut into sizes required for handkerchiefs, and were returned for duty as flax handkerchiefs, whether in the piece or otherwise, finished or unfinished, not hemmed."

At the hearing of the cases testimony was introduced by the importers, who sought to establish that the term "unfinished handkerchiefs" as used in said paragraph 345 referred to an article well known in trade and commerce of a peculiar description, and that that phrase was used in a commercial sense. One of the witnesses introduced for that purpose, a member of the importing firm, testified as follows: "Q. You say there are articles known in trade and commerce as unfinished handkerchiefs? A. There used to be, and may be now, so far as I know. If there is any one who uses them, it would be Achison, Hardin & Company, because they have that class of goods. There were some printed forms coming out in the piece—a piece of linen or cotton usually—with the shape of a handkerchief printed upon it, and when cut apart and hemmed it would be a handkerchief. It was really an unhemmed handkerchief, and there was a corded border unhemmed handkerchief. Q. They were known in the trade and commerce as unfinished handkerchiefs? A. Well, I always knew them as handkerchief cloth by the dozen. An unfinished handkerchief, in the usage of the commercial community, is an unhemmed handkerchief. I don't know of any other term for an unfinished handkerchief. They are handkerchiefs in the first place, but they are finished. These are not handkerchiefs, but can be made into handkerchiefs. Q. More of these are used for handkerchiefs than for tidies and doilies? A. We use more of them." The next witness introduced was a member of the firm referred to in the testimony above, who testified as follows: "Q. Can you give a concise definition of what is understood in trade and commerce as an unfinished handkerchief? A. I would say a handkerchief like that, with the border fringed (referring to one of the exhibits in this case). That is not finished. It is not hemmed. Of course there are a variety, and also woven corner borders; but I would call that (Exhibit A) an unfinished handkerchief. (Exhibit A, here referred to, was one of the squares in question, the subject of these protests.) Q. Are you familiar with pieces of linen cut into squares and circles and rectangular figures, such as these exhibits? A. I am familiar with most forms cut up for a handkerchief; yes. Q. Are they used for any other purpose than to make handkerchiefs—such squares as these? A. There are doilies made out of it, like table doilies. Q. What do you think is the principal use of these as an article, if you know? A. I suppose to be used for a handkerchief."

It is evident from the testimony above offered in rebuttal of the return of the collector that there is no particular article in trade and commerce known as an "unfinished handkerchief"; that is to say, that the term "unfinished handkerchief" is not referable to any particular class of articles known to the trade as such; that the word is descriptive, and not denominative. It appears from the testimony of the importers' witnesses that the articles in question, the subject of this protest, are deemed unfinished handkerchiefs by those members of the trade importing them in large quantities. It is further evident from the testimony that the principal use to which the articles in question are applied is that for subsequent manufacture into handkerchiefs. No other conclusion could be deduced from the testimony, which is uncontradicted upon these points.

We think the rule laid down in the case of Magone v. Wiederer, 159 U. S. 555, 16 Sup. Ct. 122, 40 L. Ed. 258, applicable to the merchandise herein. In that case the Supreme Court of the United States upheld instructions to a jury as follows (the articles in question being glass cut to the shape of faces for clocks): "In determining this question whether or not these articles are parts of clocks, it will not be necessary for you to say they were exclusively used for that purpose. An article may be chiefly used for a certain purpose, and be diverted from its principal use; somebody may put it to a purpose for which it was not originally intended. That cannot, in my judgment, change its tariff nomenclature. The Supreme Court, in a case which I think is somewhat similar to the facts, although relating to different sections of the statute, sustained the charge to the jury 'that the use to which the articles were chiefly adapted and for which they were used determined their character, within the meaning of the statute'; and so I will say to you as the law of the case, as I understand it, that if you find that these articles were chiefly used as parts of clocks, that would determine their tariff nomenclature."

We find from the evidence and record in this case that the articles the subject of this protest are chiefly used for subsequent manufacture into handkerchiefs; that part of the process of that manufacture has already been devoted to the articles, so that in their present condition they are partly manufactured handkerchiefs. We conclude that they were properly assessed by the collector.

The protest is overruled, and the decision of the collector affirmed.

W. Wickham Smith, for importers.
Charles D. Baker, Asst. U. S. Atty.

WHEELER, District Judge. Affirmed on the opinion of the board.

---

### FABRICANT v. PHILADELPHIA RAPID TRANSIT CO.

(Circuit Court, E. D. Pennsylvania. June 12, 1905.)

NEW TRIAL—GROUNDS.

The fact that neither party is entirely satisfied with the result is no reason why a new trial should be granted after a fair hearing before an impartial jury.

At Law. On motion for new trial.

Joseph H. Brinton, for plaintiff.
Wm. M. Stewart, Jr., and Thomas Leaming, for defendant.

HOLLAND, District Judge. This case was an action for damages for personal injuries caused by the alleged negligence of the defendant, tried in this court April 6, 1905, and resulted in a verdict in favor of plaintiff for $3,600. Motion for a new trial was duly made. The reasons assigned have been considered, but we fail to find any error either in the trial or the charge of the court. The case was fairly submitted to the jury, and the verdict was justified by the evidence in the cause. The fact that neither party is entirely satisfied with the result is no reason why a new trial should be granted after a fair hearing before an impartial jury.

The motion for a new trial is therefore overruled.